

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | 4:09-CR-160-A (02) |
| | § | |
| JUAN RAMIREZ | § | |

## DEFENDANT'S MOTION FOR A DOWNWARD VARIANCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant, Juan Ramirez, by and through his attorney of record, Matthew K. Belcher, and hereby requests that this Court vary below the advisory guideline range and sentence the Defendant to **60 months** in the Bureau of Prisons, followed by a term of supervised release. In support, the Defendant would show as follows:

I. **Personal History/Characteristics of the Defendant:** *18 U.S.C. §3553(a)(1)*

Ramirez is currently 40 years of age and, up until his conviction for the instant offense, has never been arrested for, let alone convicted, of any type of criminal offense. As such, Ramirez is a true first time offender with a very low risk of recidivism. Furthermore, Ramirez withdrew from his criminal conduct over one year prior to his arrest. This withdrawal was not, however, due to police intervention or fear of police intervention. Since his withdrawal, Ramirez has continued to work and provide for his family. Also, since his arrest in October of last year, Ramirez has been under conditions of pretrial release and, to this date, has performed flawlessly.

*FIRST TIME OFFENDER WITH LOW RISK OF RECIDIVISM*

The Sentencing Commission has observed that criminal history points predict a

defendant's future risk of recidivism better than the criminal history category (CHC). The zero criminal history point offender represents an extreme example of this phenomenon: as an offender without a single criminal history point, Ramirez presents only a little more than 10% risk of recidivism the first 24 months after release; by contrast, the other offenders in his criminal history category (those with one criminal history point) have twice his recidivism rate. See U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 7 (2004).

Other than the wildly variant recidivism statistics among offenders in Category Six, the increase in recidivism rates after offenders acquire their first criminal history point represents the single steepest increase in recidivism accompanying the addition of a single criminal history point. See U.S. Sentencing Commission, *Measuring Recidivism*, at 7 (2004). In short, the Commission has observed that "scoring at the minimum value of zero on the CHC indicates a very low recidivism risk." See U. S. Sentencing Commission, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, at 5 (2005). This research has been explicitly undertaken in connection with the Commission's duty to formulate Guideline revisions. *Id.*

Before *Kimbrough v. United States*, 128 S.Ct. 558 (2007), Fifth Circuit precedent would have arguably limited the discretion of the district court to vary from the Guidelines on the basis of "disagreement with the policy choices of Congress or the Sentencing Commission." See *United States v. Tzep-Mejia*, 461 F.3d 522, 527 (2006). *Kimbrough* overrules this Court's holding. The defendant in *Kimbrough* received a below-Guideline sentence on the basis of the district court's conclusion that the Guideline disparity between crack and powder cocaine

offenses was unwarranted. *Kimbrough v. United States*, 128 S.Ct. at 565. The court of appeals, however, concluded that the sentence was unreasonably short because "a sentence 'outside the guidelines range is *per se* unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses.'" *Id.*

The Supreme Court reversed, stressing that such *per se* prohibitions conflicted with the district court's authority to "tailor the sentence in light of other statutory concerns..." besides the Guidelines. *Id.* at 570 (quoting *United States v. Booker*, 543 U.S. 220, 245-246 (2005)). The Court rejected the government's argument that the crack/powder disparity was "implicitly" directed by Congress. *Id.* at 571. Congress, it held, had required district courts to apply the 100:1 crack to powder ratio when determining a mandatory minimum, but had never **compelled** them to apply such a ratio in determining the defendant's sentence within the statutory range. *Id.* at 571-573. Similarly, Congress has **never** compelled the Sentencing Commission to treat offenders with no prior criminal history in a manner equivalent to those with countable criminal convictions. Quite the contrary, it has explicitly distinguished between them:

> The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

28 U.S.C. 994(j).

Ordinarily, the Guidelines represent a fair aggregation of the 3553(a) factors; in this case, as the Commission has recognized, they overstate the need for incapacitation and specific deterrence. Ramirez prays that the Court take the Commission's role –as it has been recently explained–seriously and consider a substantial variance based on Ramirez having zero criminal

history points, no conviction for a crime of violence, and a very low risk of recidivism.

## II.     Need to Avoid Unwarranted Disparity:     *18 U.S.C. § 3553(a)(6)*

Of the six co-defendants listed in the indictment pertaining to the instant offense of conviction, five of them have plead guilty and been adjudged guilty of conspiring to smuggle weapons out of the United States. This is the exact same conduct that Ramirez has been held accountable for when calculating the appropriate advisory guideline range sentence in the PSR. However, unlike Ramirez, four of the co-defendant's cannot receive more than **60 months** imprisonment. This, despite the fact that Ramirez and the remaining co-defendant's are similarly situated and been held accountable for similar conduct.. Accordingly, any sentence above **60 months** for Ramirez would result in unwarranted disparity and, as such, would.
be an unreasonable sentence.

### *Jesus Ortega*:

On December 23, 2009, Ortega pleaded guilty to Conspiracy to Smuggle Goods from the United States in violation of 18 U.S.C. § 371. In support of his plea of guilty, Ortega admitted that he and Daniel Bernardino, from June 14, 2006, until at least October 21, 2009, conspired with each other and with others to illegally export firearms and ammunition from the United States to Mexico. Furthermore, on December 9, 2008, Ortega was stopped approximately 25 miles from the Mexican border and was found in possession of 33 firearms and approximately 9,000 rounds of ammunition. All of which Ortega intended to smuggle into Mexico illegally.

It is unknown to Ramirez at this time whether or not Ortega has any prior criminal convictions. If Ortega does, he would be dissimilar to Ramirez who has no prior arrests or convictions. This disparity, if any, would also warrant consideration by the Court when

sentencing Ramirez.

### *Gustavo Pulido*:

Pulido, cousin to the individual authorities believe is calling the shots from Mexico, was alleged to have been storing guns and then transferring them to individuals who, in turn, were smuggling them to Mexico. On December 31, 2009, Pulido pleaded guilty to Conspiracy to Smuggle Goods from the United States, in violation of 18 U.S.C. §371 and, in support of this plea of guilty, Pulido stipulated that he concealed weapons knowing that these weapons were to be smuggled from the United States to Mexico.

It is unknown to Ramirez at this time whether or not Pulido has any prior criminal convictions. If Pulido does, he would be dissimilar to Ramirez who has no prior arrests or convictions. This disparity, if any, would also warrant consideration by the Court when sentencing Ramirez.

### *Isidro Lozano*:

On December 11, 2009, Lozano pleaded guilty to Conspiracy to Smuggle Good from the United States, in violation of 18 U.S.C. § 371. In support of this plea, Lozano stipulated that from June 14, 2006, until at least October 21, 2009, he conspired with co-defendants Rosales and Flores to illegally transport firearms and ammunition from the United States into Mexico. Furthermore, on October 16, 2009, Lozano received six Colt Law Enforcement Carbine Rifles, a Colt .38 Super Pistol, 200 pistol magazines, and 25 AR-15 magazines. Lozano received these items knowing that they were to be smuggled into Mexico.

It is unknown to Ramirez at this time whether or not Lozano has any prior criminal convictions. If Lozano does, he would be dissimilar to Ramirez who has no prior arrests or

convictions. This disparity, if any, would also warrant consideration by the Court when sentencing Ramirez.

*Eduardo Flores:*

On December 11, 2009, Flores also pleaded guilty to Conspiracy to Smuggle Goods from the United States, in violation of 18 U.S.C. § 371. In support of his plea, Flores stipulated that, from June 2006, until at least October 2009, he, along with Rosales and Lozano, conspired to smuggles firearms and ammunition from the United States into Mexico. Furthermore, on October 16, 2009, Flores acted as the middle-man between Rosales and Lozano, setting up a deal to store and then transport firearms and magazines from McAllen, Texas.

It is unknown to Ramirez at this time whether or not Flores has any prior criminal convictions. If Flores does, he would be dissimilar to Ramirez who has no prior arrests or convictions. This disparity, if any, would also warrant consideration by the Court when sentencing Ramirez.

*Conclusion:*

In short, the four co-defendant's listed above have been convicted of almost identical criminal conduct to that of Ramirez. All have been held accountable for playing a role in a larger conspiracy to traffic firearms from the United States to Mexico. Most are alleged to have been involved for approximately three years. Some stored the firearms and ammunition, some smuggled the firearms and ammunition, while others purchased them. Each respective role being a necessary role in order to achieve the overall objective of the conspiracy.

Yet, unlike the four co-defendant's listed above, Ramirez exposure is greater than **60 months**. This, despite the fact that they all played a similar role in the conspiracy, just in a

different department...so to speak. No doubtedly, the Government will point to the fact that Ramirez was given an aggravating role adjustment due to individuals he had buying the guns for him. However, his conduct, in relation to the mere purchasers, is more culpable; not his conduct in relation to the co-defendants that have plead guilty and are awaiting sentencing for Conspiracy to Smuggle Goods, to wit: firearms and ammunition, from the United States. In relation to these individuals, Ramirez is similarly situated and, as such, any disparity in sentencing would be unwarranted.

### III. Conclusion:

As stated earlier, Ramirez has no prior arrests, let alone criminal convictions, and, as such, is a true first time offender. As a true first time offender, Ramirez has a very low risk of recidivism. This low risk is further bolstered by his lack of criminal conduct since his withdrawal from the criminal activity approximately one year prior to his arrest and subsequent conviction. Additionally, since Ramirez's arrest in October of 2009, he has been subject to conditions of pretrial release and supervision. To date, there has been no indication whatsoever that Ramirez has do anything but fully and completely comply with all terms and conditions of his release.

As pointed out in the PSR, Ramirez has steadily worked hard and provided for his family. He has accepted responsibility for his conduct, expressed remorse for his actions, and is now facing a lengthy sentence of incarceration. However, a sentence greater than **60 months** would be greater than necessary to achieve the goals set out in 18 U.S.C. §3553(a). Ramirez has no prior history and no subsequent history of trouble with the law. Furthermore, Ramirez has shown his ability to conform with conditions of release. These same conditions will apply while

Ramirez is under two terms of supervised release. These terms, in addition to a sentence of **60 months**, would result in an overall term of governmental supervision and control over Ramirez of **eight years**. Such a sentence is sufficient, but not greater than necessary.

WHEREFORE, PREMISES CONSIDERED, the Defendant, Juan Ramirez, requests that the Court modestly vary from the advisory guideline range of **70 to 87 months** and impose a sentence of **60 months** imprisonment, followed by a **three year term of supervision**. Such as sentence would reflect the unique history and characteristics of Ramirez, avoid unwarranted disparity between the co-defendant's with similar records who have been convicted of similar conduct, and adequately protect the public from any further criminal conduct.

                      Respectfully submitted,

                      RICHARD ANDERSON
                      Federal Public Defender
                      Northern District of Texas

By:   /s/ Matthew K. Belcher
                      Matthew K. Belcher
                      Assistant Federal Defender
                      819 Taylor St., Ste. 9A10
                      Fort Worth, Texas
                      (817) 978-2753 (phone)
                      (817) 978-2757 (fax)

                      ATTORNEY FOR DEFENDANT
                      TX Bar #24042242

**CERTIFICATE OF SERVICE**

    I, Matthew K. Belcher, hereby certify that on this the 22nd day of March, 2010, a true and correct copy of the foregoing motion was hand delivered to the office of Josh Burgess, Assistant United States Attorney and to the office of Colleen Hammons, United States Probation Officer.

_____
Matthew K. Belcher