```
 1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
 2                            FORT WORTH DIVISION

 3
      UNITED STATES OF AMERICA       .   CRIMINAL ACTION NO.
 4                                   .   4:09-CR-160-A
      VS.                            .
 5                                   .
      JUAN RAMIREZ   (02)            .   December 11, 2009
 6                                   .   10:55 a.m.
      .  .  .  .  .  .  .  .  .  .   .
 7

 8                      TRANSCRIPT OF PROCEEDINGS
                              (Rearraignment)
 9              BEFORE THE HONORABLE JOHN H. McBRYDE
                    UNITED STATES DISTRICT JUDGE
10

11    APPEARANCES:

12    For the United States:         Mr. Joshua T. Burgess
                                     Mr. Frederick M. Schattman
13                                   Assistant United States Attorneys
                                     801 Cherry Street, Suite 1700
14                                   Fort Worth, Texas  76102
                                     (817) 252-5200
15
      For Defendant Ramirez:         Mr. Matthew K. Belcher
16                                   Assistant Federal Public Defender
                                     819 Taylor Street, Room 9A10
17                                   Fort Worth, Texas  76102
                                     (817) 978-2753
18
      Official Court Reporter:       Eileen M. Brewer
19                                   424 United States Courthouse
                                     501 West Tenth Street
20                                   Fort Worth, Texas  76102-3637
                                     (817) 850-6661
21

22

23

24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer-aided transcription.
```

```
 1                   P R O C E E D I N G S,

 2          THE COURT:  I'm first calling for rearraignment No.

 3   4:09-CR-155-A, United States of America versus Fernando

 4   Perales-Carrizales.  Let's see, Mr. Smith is here for

 5   government, and Mr. Hermesmeyer is here for the defendant.

 6      Okay.  This is -- Your client needs an interpreter?

 7              MR. HERMESMEYER:  Yes, Your Honor.

 8          THE COURT:  And Mr. Francisco Hernandez is here for

 9   that purpose, and he's interpreting through a transmitter --

10          THE INTERPRETER:  Yes, sir.

11          THE COURT:  -- with a microphone on the defendant's

12   head.  I mean, a receiver on the defendant's head.

13      Have you been sworn in this case?

14          THE INTERPRETER:  No, Your Honor.

15          THE COURT:  Okay.  The interpreter will raise his

16   right hand to be sworn.

17      (Mr. Hernandez is sworn to translate Spanish into English.)

18          THE COURT:  Okay.  This is directed to the defendant:

19   Raise your right hand to be sworn.

20      (Defendant Perales is sworn.)

21          THE COURT:  Do you understand that you're now under

22   oath and that if you answer any of my questions falsely your

23   answers could later be used against you in a prosecution for

24   perjury or making a false statement?

25              DEFENDANT PERALES:  Yes.
```

1          THE COURT:  What skills do you have in the English

2    language?  How well can you read, write, understand, and speak

3    the English language?

4          DEFENDANT PERALES:  None.

5          THE COURT:  Okay.  What is your full name?

6          DEFENDANT PERALES:  Fernando Perales-Carrizales.

7          THE COURT:  Do you normally go by the surname Perales?

8          DEFENDANT PERALES:  Perales.

9          THE COURT:  Okay.  Why don't you and Mr. Hermesmeyer

10   step back just a minute, or you step back.  Mr. Hermesmeyer has

11   to stay here for a minute.

12      Okay.  I'm next calling No. 4:09-CR-157-A, United States of

13   America versus Rosendo Fuentes-Rendon.  Mr. Smith is here for

14   the government, and Mr. Hermesmeyer is here for the defendant.

15      And your client needs an interpreter in this case,

16   Mr. Hermesmeyer?

17          MR. HERMESMEYER:  Yes, Your Honor.

18          THE COURT:  And Mr. Francisco Hernandez is here for

19   that purpose.

20      Have you been sworn in this case, Mr. Hernandez?

21          THE INTERPRETER:  No, Your Honor.

22          THE COURT:  Okay.  Raise your right hand to be sworn.

23      (Mr. Hernandez is sworn to translate Spanish into English.)

24          THE COURT:  Okay.  This is directed to the defendant:

25   Raise your right hand to be sworn.

1        (Defendant Fuentes is sworn.)

2            THE COURT:  Do you understand that you're now under

3    oath and that if you answer any of my questions falsely your

4    answers could later be used against you in a prosecution for

5    perjury or making a false statement?

6            DEFENDANT FUENTES:  I do.

7            THE COURT:  How well do you read, write, understand,

8    and speak the English language?

9        Speak toward the microphone.  How well do you read, write,

10   understand, and speak the English language?

11           DEFENDANT FUENTES:  20 percent.

12           THE COURT:  Okay.  What is your full name?

13           DEFENDANT FUENTES:  Rosendo Fuentes-Rendon.

14           THE COURT:  Okay.  And do you normally go by the

15   surname Fuentes?

16           DEFENDANT FUENTES:  Yes, sir.

17           THE COURT:  Okay.  Why don't you step back a minute,

18   and we'll go forward with the next defendant.

19       I'm now calling forward No. 4:09-CR-160-A, United States of

20   America versus Javier Rosales.  Mr. Burgess is here for the

21   government, and Mr. Shaw is here for the defendant.

22           MR. SHAW:  Yes, Your Honor.

23           THE COURT:  Let's see, your client needs an

24   interpreter, Mr. Shaw?

25           MR. SHAW:  Your Honor, if it please the Court, he is

1  the one that had written a letter to you saying that he doesn't

2  read the English language very well.

3          THE COURT:  Well, does he understand when we talk?

4          MR. SHAW:  I believe that he does, Your Honor,

5  but. . .

6          THE COURT:  Mr. Rosales, raise your right hand to be

7  sworn.

8      (Defendant Rosales is sworn.)

9          THE COURT:  Mr. Rosales, do you understand that you're

10  now under oath and that if you answer any of my questions

11  falsely your answers could later be used against you in a

12  prosecution for perjury or making a false statement?

13          DEFENDANT ROSALES:  Yes.

14          THE COURT:  Apparently you can speak and understand

15  the English language but can't read it; is that correct?

16          DEFENDANT ROSALES:  Correct.

17          THE COURT:  So we don't need an interpreter with me

18  talking to you and you talking to me; is that correct?

19          DEFENDANT ROSALES:  Yes.  I think I need because I

20  don't know 100 percent.

21          THE COURT:  Okay.  Have you been sworn in this case,

22  Mr. Hernandez?

23          THE INTERPRETER:  Excuse me, Your Honor?

24          THE COURT:  Have you been sworn in this case?

25          THE INTERPRETER:  No, Your Honor.

1              THE COURT:  Okay.  Well, Mr. Hernandez will interpret,

2    and I'll ask that he be sworn in this case.

3        (Mr. Hernandez is sworn to translate Spanish into English.)

4              THE COURT:  Mr. Rosales, what is your full name?

5         DEFENDANT ROSALES:  Javier Rosales-Beloz.

6              THE COURT:  How do you spell the last name?

7         DEFENDANT ROSALES:  B-E-L-O-Z.

8              THE COURT:  Do you normally go by the surname Rosales?

9         DEFENDANT ROSALES:  Yes.

10        THE COURT:  Why don't you step back with your attorney

11   just a minute, and we'll come back to you.

12       I'm next calling in this same case, 4:09-CR-160-A, United

13   States of America versus Isidro Lozano.  Mr. Burgess is here for

14   the government, and Mr. Danielson is here for Mr. Lozano.

15       Mr. Danielson, does your client need an interpreter?

16            MR. DANIELSON:  He does, Your Honor.

17            THE COURT:  Mr. Hernandez is here for that purpose.

18   He's been sworn, so we don't need to swear him again.

19       You need some equipment, Mr. Hernandez?

20            MR. DANIELSON:  We do, yes.

21            THE COURT:  Okay.  I'll ask the defendant to raise his

22   right hand to be sworn.

23       (Defendant Lozano is sworn.)

24            THE COURT:  Mr. Lozano, do you understand that you're

25   now under oath and that if you answer any of my questions

1    falsely your answers could later be used against you in a

2    prosecution for perjury or making a false statement?

3              DEFENDANT LOZANO:  I do.

4              THE COURT:  What skills do you have in the English

5    language?  How well can you read, write, understand, and speak

6    the English language?

7              DEFENDANT LOZANO:  20 percent.

8              THE COURT:  What is your full name?

9              DEFENDANT LOZANO:  Isidro Lozano-Perez.

10             THE COURT:  What is the last name?

11             DEFENDANT LOZANO:  Lozano.

12             THE COURT:  No, the last name you said.

13             DEFENDANT LOZANO:  Perez.

14             THE COURT:  Spell that for me.

15             DEFENDANT LOZANO:  P-E-R-E-Z.

16             THE COURT:  Perez.  I'm sorry.  I didn't understand

17   what you were saying.

18        Do you normally go by the surname Lozano?

19             DEFENDANT LOZANO:  Yes.

20             THE COURT:  Okay.  Why don't you step back with your

21   attorney just a minute.

22        Next, I'm calling in this same case, No. 4:09-CR-160-A,

23   it's United States of America versus Eduardo Flores this time.

24   Mr. Burgess is here for the government, and Mr. Stickels is here

25   for the defendant.

```
 1        Mr. Flores, raise your right hand to be sworn.

 2        (Defendant Flores is sworn.)

 3              THE COURT:  Mr. Flores, do you understand that you're

 4   now under oath and that if you answer any of my questions

 5   falsely your answers could later be used against you in a

 6   prosecution for perjury or making a false statement?

 7              DEFENDANT FLORES:  Yes, I do, Your Honor.

 8              THE COURT:  I take it you read, write, and understand

 9   the English language proficiently?

10              DEFENDANT FLORES:  Yes, Your Honor.

11              THE COURT:  Okay.  And what is your full name?

12              DEFENDANT FLORES:  Eduardo Flores-Garza.

13              THE COURT REPORTER:  Say that last name again, please.

14              DEFENDANT FLORES:  Flores-Garza.

15              THE COURT:  Okay.  Spell that very last part.

16              DEFENDANT FLORES:  G-A-R-Z-A.

17              THE COURT:  And do you normally go by the surname

18   Flores?

19              DEFENDANT FLORES:  Yes, sir.

20              THE COURT:  Okay.  Why don't you step back with your

21   attorney a minute.

22        Okay.  I'm next calling No. 4:09-CR-134-A, United States of

23   America versus Gary Wayne Sides.  Mr. Bradford is here for the

24   government.  Mr. Belcher is here for the defendant.

25        Mr. Sides, raise your right hand to be sworn.
```

1          (Defendant Sides is sworn.)

2               THE COURT:  Mr. Sides, do you understand that you're

3     now under oath and that if you answer any of my questions

4     falsely your answers could later be used against you in a

5     prosecution for perjury or making a false statement?

6               DEFENDANT SIDES:  Yes, sir.

7               THE COURT:  And I take it you read, write, and

8     understand the English language proficiently?

9               DEFENDANT SIDES:  Yes, sir.

10              THE COURT:  And what is your full name?

11              DEFENDANT SIDES:  Gary Wayne Sides.

12              THE COURT:  Why don't you step back a minute with your

13    attorney.  Go down to the end of the line there.

14         Okay.  I'm next calling No. 4:09-CR-160-A, United States of

15    America versus Juan Ramirez.  Mr. Burgess is here for the

16    government, and Mr. Belcher is here for the defendant.

17         Mr. Ramirez, raise your right hand to be sworn.

18         (Defendant Ramirez is sworn.)

19              THE COURT:  Does your client need an interpreter?

20              MR. BELCHER:  Yes, he does, Your Honor.

21              THE COURT:  Okay.  Francisco Hernandez is here for

22    that purpose.  Let's see, I don't believe -- Has he already been

23    sworn in this case with one of these earlier defendants?

24              MR. BURGESS:  Yes, sir.

25              THE COURT:  Okay.  This is directed to the defendant:

1    Well, raise your right hand to be sworn.

2              MR. BELCHER:  You've already sworn him.

3              THE COURT:  Oh, you've sworn him.  I'm sorry.

4      We're doing things over and over again.  You can put your

5    hand down.  You've done that.

6      Do you understand that you're now under oath and that if

7    you answer any of my questions falsely your answers could later

8    be used against you in a prosecution for perjury or making a

9    false statement?  Do you understand that?

10             DEFENDANT RAMIREZ:  I do.

11             THE COURT:  What are your skills in the English

12   language?  How well can you read, write, understand, and speak

13   the English language?

14             DEFENDANT RAMIREZ:  About 40 percent.

15             THE COURT:  Okay.  Why don't you -- What is your full

16   name?

17             DEFENDANT RAMIREZ:  Juan Manuel Ramirez-Pulido.

18             THE COURT:  I have Juan Ramirez, but I didn't

19   understand for sure what the other parts were.  What was the

20   name after Juan?

21             DEFENDANT RAMIREZ:  Manuel.

22             THE COURT:  Spell that for me.

23             DEFENDANT RAMIREZ:  M-A-N-U-E-L.

24             THE COURT:  Okay.  And what came after Ramirez?  What

25   was at the very end of it?

1            MR. BELCHER:  It was Pulido, Your Honor, P-U-L-I-D-O.

2            THE COURT:  Okay.  Do you normally go by the surname

3    Ramirez?

4            DEFENDANT RAMIREZ:  Yes.

5            THE COURT:  Okay.  Y'all go back at the end of the

6    line over there.

7        I'm next calling No. 4:09-CR-115-A, United States of

8    America versus Steven Ray Adams.  Mr. -- Who is here for the

9    government?  Mr. Schattman?  Mr. Schattman is here for the

10   government, and Mr. Durden is here for the defendant.

11       And I'll ask the defendant to raise his right hand to be

12   sworn.

13       (Defendant Adams is sworn.)

14           THE COURT:  Mr. Adams, do you understand that you're

15   now under oath and that if you answer any of my questions

16   falsely your answers could later be used against you in a

17   prosecution for perjury or making a false statement?

18           DEFENDANT ADAMS:  Yes, Your Honor.

19           THE COURT:  And I take it you read, write, understand,

20   and speak the English language proficiently?

21           DEFENDANT ADAMS:  Correct.

22           THE COURT:  Okay.  What is your full name?

23           DEFENDANT ADAMS:  Steven Ray Adams.

24           THE COURT:  Why don't you and your attorney step back

25   a minute.

1    I'm next calling in this same case, 4:09-CR-115-A, United

2    States of America, and this time the defendant is Miyoshia

3    Wylynn Nance.  Of course, Mr. Schattman is here for the

4    government, and Mr. White is here for the defendant.

5        I'll ask the defendant to raise her right hand to be sworn.

6        (Defendant Nance is sworn.)

7            THE COURT:  Do you understand that you're now under

8    oath and that if you answer any of my questions falsely your

9    answers could later be used against you in a prosecution for

10   perjury or making a false statement?

11           DEFENDANT NANCE:  Yes, sir.

12           THE COURT:  And I take it you read, write, understand,

13   and speak the English language proficiently?

14           DEFENDANT NANCE:  Yes, sir.

15           THE COURT:  What is your full name?

16           DEFENDANT NANCE:  My name is Miyoshia Wylynn Nance.

17           THE COURT:  Okay.  Y'all can just stay where you are

18   if you would like.

19       I have in front of me all nine defendants who are, to my

20   understanding, to plead guilty to some offense; and I'm going to

21   give each of you some explanations that are very important,

22   bearing in mind your intent to plead guilty, so listen closely.

23   I'm going to start by explaining to you the constitutional

24   rights you have.

25       You, and each of you, may, if you choose, plead not guilty

1    to any offense charged against you or persist in that plea if it

2    already has been made.  If you plead not guilty, the

3    Constitution of the United States guarantees to you the

4    following rights:

5        The right to a speedy and public trial by a jury in this

6    District.

7        The right at such a trial for you to confront, that is, to

8    see, hear, and cross-examine, all witnesses against you.

9        The right to use the power and process of the Court to

10   compel the production of any evidence, including the attendance

11   of any witnesses, in your favor.

12       The right to have the assistance of an attorney in your

13   defense at all stages of the proceedings.  If necessary, an

14   attorney will be appointed to represent a defendant who does not

15   have an attorney.

16       You cannot be compelled to testify.  The decision of

17   whether you will testify or not is a matter in which your

18   judgment will control.

19       The United States government must prove your guilt beyond a

20   reasonable doubt.  If you're found guilty, you have the right to

21   appeal your conviction.

22       Defendant Perales, do you understand that you have those

23   constitutional rights?

24            DEFENDANT PERALES:  Yes.

25            THE COURT:  Defendant Fuentes, do you understand you

```
 1   have the constitutional rights I've just described?

 2            DEFENDANT FUENTES:  Yes.

 3            THE COURT:  Defendant Rosales, do you understand you

 4   have the constitutional rights I've just described?

 5            DEFENDANT ROSALES:  Yes.

 6            THE COURT:  Defendant Lozano, do you understand you

 7   have the constitutional rights I've just described?

 8            DEFENDANT LOZANO:  Yes.

 9            THE COURT:  Defendant Flores, do you understand you

10   have the constitution rights I've just described?

11            DEFENDANT FLORES:  Yes, Your Honor.

12            THE COURT:  Defendant Sides, do you understand that

13   you have the constitutional rights I've just described?

14            DEFENDANT SIDES:  Yes, Your Honor.

15            THE COURT:  Defendant Ramirez, do you understand you

16   have the constitutional rights I've just described?

17            DEFENDANT RAMIREZ:  Yes.

18            THE COURT:  Was that a "yes"?

19            DEFENDANT RAMIREZ:  Yes.

20            THE COURT:  Defendant Adams, do you understand that

21   you have those constitutional rights I've just described?

22            DEFENDANT ADAMS:  Yes, Your Honor.

23            THE COURT:  Defendant Nance, do you understand you

24   have the constitutional rights I've just described?

25            DEFENDANT NANCE:  Yes, sir.
```

1           THE COURT:  Okay.  I'm going to give all of you some

2    further explanations that are very important, bearing in mind

3    your intent to plead guilty, so listen closely.

4           If you plead guilty and if such a plea is accepted by the

5    Court, there will not be a further trial of any kind.  So by

6    pleading guilty, you waive the right to a trial, as well as

7    those other rights associated with a trial, as I have described

8    them.

9           Generally, a defendant who is accused of a crime cannot

10   plead guilty unless he or she is actually guilty of that crime.

11          In federal court, the judge determines the penalty if a

12   defendant is convicted whether it is on a verdict of a jury or

13   on a plea of guilty.

14          Other than the staff of the Court, the Court has not and

15   will not talk to anyone about the facts of your case except here

16   in your presence, where you, your attorney, and representatives

17   of the government are all present.

18          If you should be convicted, you and your lawyer each will

19   be given an opportunity to present to the Court any pleas for

20   leniency.  The penalty will be decided on the basis of the facts

21   set forth in the presentence report and facts heard here.  You

22   should never depend or rely upon any statement or promise by

23   anyone, whether connected with a law enforcement agency or the

24   government, or anyone else as to what penalty will be assessed

25   against you.

1    Should you decide to plead guilty, your plea of guilty must

2    not be induced or prompted by any promises, mental pressure,

3    threats, force, coercion, or pressure of any kind.  A plea of

4    guilty must be purely voluntary, and you should plead guilty

5    only because you're guilty and for no other reason.

6    Now, one or more of you, I believe, will be pleading guilty

7    pursuant to a plea agreement.  I'll probably ask questions about

8    the plea agreement and might or might not order it filed.  More

9    than likely I won't be in a position today to determine whether

10   I accept or reject the plea agreement.

11   If later on I conclude that a plea agreement should be

12   rejected, and if I, in fact, do reject it, I'll notify the

13   affected defendant and the attorneys that I've done so and will

14   give that defendant an opportunity to withdraw his plea of

15   guilty.  And, of course, if I reject the plea agreement, neither

16   the defendant nor the government will have any rights or

17   obligations under that plea agreement.

18   Now, the offense to which each of you proposes to plead

19   guilty is a felony.  An adjudication of guilt of such an offense

20   may deprive a defendant of valuable rights, such as the right to

21   vote, to hold public office, to serve on a jury, to possess any

22   kind of firearm, and other rights.

23   An adjudication of guilt could result in deportation, that

24   is, being required to leave the United States, of a defendant

25   who is an alien and could adversely affect such a defendant's

1    ability ever to become a citizen of the United States.

2        Defendant Perales, have you understood the additional

3    explanations I've given you?

4            DEFENDANT PERALES:  Yes.

5            THE COURT:  Defendant Fuentes, have you understood the

6    additional explanations I've given you?

7            DEFENDANT FUENTES:  Yes.

8            THE COURT:  Defendant Rosales, have you understood the

9    additional explanations I've given you?

10           DEFENDANT ROSALES:  Yes.

11           THE COURT:  Defendant Lozano, have you understood the

12   additional explanations I've given you?

13           DEFENDANT LOZANO:  Yes.

14           THE COURT:  Defendant Flores, have you understood the

15   additional explanations I've given you?

16           DEFENDANT FLORES:  Yes, Your Honor.

17           THE COURT:  Defendant Sides, have you understood the

18   additional explanations I've given you?

19           DEFENDANT SIDES:  Yes, Your Honor.

20           THE COURT:  Defendant Ramirez, have you understood the

21   additional explanations I've given you?

22           DEFENDANT RAMIREZ:  Yes.

23           THE COURT:  Defendant Adams, have you understood the

24   additional explanations I've given you?

25           DEFENDANT ADAMS:  Yes, Your Honor.

1          THE COURT:  Defendant Nance, have you understood the

2    additional explanations I've given you?

3          DEFENDANT NANCE:  Yes, sir.

4          THE COURT:  Okay.  I'm going to go over now with you

5    the sentencing process.  I'm going to give you explanations

6    about the sentencing process, and these are very important,

7    bearing in mind your intent to plead guilty, so listen closely.

8       Now, under the Sentencing Reform Act of 1984, the United

9    States Sentencing Commission has issued guidelines for judges to

10   follow in determining the sentence in a criminal case.  Those

11   guidelines have been determined to be advisory only, but they

12   must be taken into account by the Court in determining what

13   sentence to impose.

14      Before I go any further with my explanation about the

15   sentencing process, I'm going to ask each of you a question:

16      Defendant Perales, have you and your attorney discussed how

17   the sentencing guidelines might apply to your case?

18          DEFENDANT PERALES:  Yes.

19          THE COURT:  Defendant Fuentes, have you and your

20   attorney discussed how the sentencing guidelines might apply to

21   your case?

22          DEFENDANT FUENTES:  Yes.

23          THE COURT:  Defendant Rosales, have you and your

24   attorney discussed how the sentencing guidelines might apply to

25   your case?

1          DEFENDANT LOZANO:  Yes.

2          THE COURT:  Defendant Lozano, have you and your

3   attorney discussed how the sentencing guidelines might apply to

4   your case?

5          MR. SHAW:  Your Honor, if it pleases the Court,

6   someone answered for Mr. Rosales.  I think he got mixed up.

7   Could we try Mr. Rosales again.

8          THE COURT:  Let me go back to Mr. Rosales.

9      Have you and your attorney discussed how the sentencing

10  guidelines might apply to your case?

11         DEFENDANT ROSALES:  I wish to talk with the judge some

12  conflict that I have with my attorney.

13         THE COURT:  Let's see, who is his attorney?

14         MR. SHAW:  That's Jim Shaw, Your Honor.  If it please

15  the Court, you sent me an order to respond by Monday morning on

16  a letter that he had written to you, and he is -- his own

17  explanation today is that he wants to, quote, wait.

18         THE COURT:  He doesn't want to enter a plea of guilty?

19         DEFENDANT ROSALES:  The thing that happened is that I

20  have a conflict with my attorney, and we don't understand each

21  other.  And I'd like to have a little more professional help --

22  assistance in my case.  I have a doubt about the capacity of the

23  attorney, but in this case I understand that he is not helping

24  me enough.

25         THE COURT:  Well, we won't take a plea from him today.

```
 1              MR. SHAW:  Thank you, Your Honor.

 2              THE COURT:  When is this case set for trial?

 3              MR. BURGESS:  January 5th, Your Honor.

 4              THE COURT:  We won't take a plea from him today, and

 5    then I've ordered you to meet with him Monday?

 6              MR. SHAW:  You ordered me to meet with him before

 7    today at 3:00 p.m.  I met with him immediately.  You requested a

 8    report by Monday morning at 10:00 a.m.

 9              THE COURT:  Okay.  Well, why don't you make that

10    report, and we'll decide where we go from there.

11              MR. SHAW:  Thank you, Your Honor.  May I be excused?

12              THE COURT:  You're excused, and your client is

13    remanded to custody.

14              MR. SHAW:  Thank you, Your Honor.

15              THE COURT:  Okay.  Let me go back to where we are.

16        Mr. Lozano, have you understood the explanations I have

17    given you since I described your constitutional rights?

18              DEFENDANT LOZANO:  Yes.

19              THE COURT:  Mr. Flores, have you understood the

20    explanations I've given you since I've described your

21    constitutional rights?

22              DEFENDANT FLORES:  Yes, Your Honor, I do.

23              THE COURT:  Defendant Sides, have you understood those

24    additional explanations I've given you?

25              DEFENDANT SIDES:  Yes, Your Honor.
```

```
 1            THE COURT:  Defendant Ramirez, have you understood the

 2   additional explanations I've given you?

 3            DEFENDANT RAMIREZ:  Yes.

 4            THE COURT:  Wait.  I'm getting out of sequence, aren't

 5   I?

 6            MR. HERMESMEYER:  Your Honor, you were --

 7            THE COURT:  I know where I was.  I'm sorry.

 8       When I'm going down -- The way I do this, if I get

 9   interrupted, no telling where I'll start again.

10       Mr. Lozano, have you discussed with your attorney how the

11   sentencing guidelines might apply to your case?

12            DEFENDANT LOZANO:  Yes.

13            THE COURT:  Mr. Flores, have you discussed with your

14   attorney how the sentencing guidelines might apply to your case?

15            DEFENDANT FLORES:  Yes, Your Honor.

16            THE COURT:  Mr. Sides, have you discussed with your

17   attorney how the sentencing guidelines might apply to your case?

18            DEFENDANT SIDES:  Yes, Your Honor.

19            THE COURT:  Defendant Ramirez, have you discussed with

20   your attorney how the sentencing guidelines might apply to your

21   case?

22            DEFENDANT RAMIREZ:  Yes.

23            THE COURT:  Defendant Adams, have you discussed with

24   your attorney how the sentencing guidelines might apply to your

25   case?
```

1          DEFENDANT ADAMS:  Yes, Your Honor.

2          THE COURT:  And, Defendant Nance, have you and your

3    attorney discussed how the sentencing guidelines might apply to

4    your case?

5          DEFENDANT NANCE:  Yes, sir.

6          THE COURT:  I'm going on now with my explanations

7    about the sentencing process, so listen closely:  The Court is

8    required to consider any applicable sentencing guidelines but

9    may depart from the guidelines under some circumstances.

10      The Court is not bound by facts that are stipulated between

11   the defendant, on the one hand, and the government, on the

12   other.

13      The Court can impose punishment that might disregard

14   stipulated facts or take into account facts not mentioned in the

15   stipulated facts.

16      You might not be permitted to withdraw your plea of guilty

17   in such an event.

18      The Court will not be able to determine the guideline

19   sentence for your case until after the presentence report has

20   been completed and you and the government have had an

21   opportunity to challenge the facts and conclusions reported by

22   the probation officer.

23      After the Court has determined what guidelines apply to a

24   case, the Court has the authority in some circumstances to

25   impose a sentence that is more severe or less severe than the

1    sentence called for by the guidelines.

2         Under some circumstances, the defendant or the government

3    may have any right to appeal the sentence the Court imposes.

4         Parole has been abolished, and if you're sentenced to

5    prison you will not be released on parole.

6         Now, as soon as this hearing is over as to each of you this

7    morning, you and your attorney, or your attorney, depending on

8    what the custody situation is, will go across the hall and set

9    up a time when the probation officer, who will be assigned to

10   your case, can interview you.

11        Your attorney can be present when that interview occurs if

12   appropriate arrangements are made.  And I'll add that the degree

13   of your cooperation with the probation officer can be a factor

14   in the severity of your sentence.  That's something you'll want

15   to discuss with your attorney.

16        The purpose of that interview is so the probation officer

17   can obtain from you information you have relevant to the

18   sentencing process.  In addition to obtaining information from

19   you on that subject, the probation officer will obtain

20   information from other sources, such as the prosecutor, the

21   investigating agency, maybe your family members, maybe your

22   employer or former employers, and perhaps other sources.

23        Once the probation officer has enough information to form

24   opinions as to what the sentencing guidelines -- which of the

25   sentencing guidelines apply to your case and what the sentencing

1   ranges are in your case, the probation officer will prepare a

2   written document called a presentence report and will put those

3   opinions in that report.  In addition to the opinions, the

4   report will contain a recitation of facts the probation officer

5   relied on in reaching those opinions.

6       I rely very heavily on those reports in determining what

7   sentence to impose, so they need to be as complete and as

8   accurate as possible.  You'll get a copy of that report and your

9   attorney will get a copy and I'll get the original.

10      Be sure that if you read English, that you read the report;

11  and if you don't read English, that it's read to you in your

12  language.  And if you think anything is left out of the report

13  that ought to be in it, or if you think something in the report

14  is inaccurate, tell your attorney about it so your attorney can

15  make an appropriate objection to the report, if your attorney

16  agrees or concludes that what you've told the attorney is a

17  suitable basis for an objection.  And I'll rule on those

18  objections at or before the sentencing hearing.  And you'll be

19  permitted to speak on your behalf at the sentencing hearing.

20      Now, the sentencing hearing in the cases of Defendants

21  Sides, Perales, and Fuentes, and -- those three, Sides, Perales,

22  and Fuentes, the sentencing hearing in your cases will be at

23  9:00 o'clock a.m. on March 26, 2010.  In the cases of Lozano and

24  Flores, your sentencing hearings will be at 9:00 o'clock a.m. on

25  April 2, 2010.  In the cases of Adams and Nance, your sentencing

1    hearings will be at 9:00 a.m. on April, 9, 2010.  All of the

2    sentencing hearings will be before me in this courtroom.

3        I'll be signing an order today as to each of you fixing the

4    time and date for your sentencing and establishing a timetable

5    for accomplishment of things that have to be accomplished

6    between now and the sentencing date, the date of the hearing.

7    Each of the attorneys will receive a copy of that order, and

8    your attorney will see that you receive a copy.  And if you

9    don't speak English -- I mean, if you don't read English, will

10   see that it's read to you in your language.

11       Defendant Perales, have you understood all the explanations

12   I've given you about the sentencing process?

13           DEFENDANT PERALES:  Yes.

14           THE COURT:  Defendant Fuentes, have you understood all

15   the explanations I've given you about the sentencing process?

16           DEFENDANT FUENTES:  Yes, sir.

17           THE COURT:  Defendant Lozano, have you understood all

18   the explanations I've given you about the sentencing process?

19           DEFENDANT LOZANO:  Yes.

20           THE COURT:  Defendant Flores, have you understood all

21   the explanations I've given you about the sentencing process?

22           DEFENDANT FLORES:  Yes, Your Honor.

23           THE COURT:  Defendant Sides, have you understood all

24   the explanations I've given you about the sentencing process?

25           DEFENDANT SIDES:  Yes, Your Honor.

```
 1              THE COURT:  Defendant Ramirez, have you understood all
 2   the explanations I've given you about the sentencing process?
 3              DEFENDANT RAMIREZ:  Yes.
 4              THE COURT:  Defendant Adams, have you understood all
 5   the explanations I've given you about the sentencing process?
 6              DEFENDANT ADAMS:  Yes, Your Honor.
 7              THE COURT:  Defendant Nance, have you understood all
 8   the explanations I've given you about the sentencing process?
 9              DEFENDANT NANCE:  Yes, sir.
10              THE COURT:  Let's see, we have some defendants who are
11   here with the intent to waive the return of an indictment and
12   proceed on the basis of an information; is that correct?
13              MR. BELCHER:  Yes, Your Honor.
14              THE COURT:  That would be Defendant Ramirez and
15   Defendant Adams and Defendant Nance; is that correct?
16              MR. WHITE:  Yes, Your Honor.
17              THE COURT:  Anybody else?
18         (No response.)
19              THE COURT:  Okay.  The explanation I'm giving you now
20   is directed to those three defendants:  Defendants Ramirez,
21   Adams, and Nance.  Listen closely.  These are important because,
22   according to my understanding, each of you plans to waive the
23   return of an indictment as to the offense to which you propose
24   to plead guilty, and each of you plans to proceed on the basis
25   of an information filed by the United States Attorney.
```

1        I want you to be sure you understand your rights relative

2  to the return of an indictment and what a grand jury is.  So the

3  three of you listen closely to what I'm getting ready to tell

4  you.

5        Because you're charged with a felony, you have the

6  constitutional right to be charged by an indictment of a grand

7  jury.  But you can waive that right and consent to being charged

8  by the information of the United States Attorney.  A grand jury

9  is composed of at least 16 and not more than 23 persons.  At

10  least 12 grand jurors must find that there is probable cause to

11  believe that the crime charged against you was committed, and

12  that the accused person committed that crime before the accused

13  person could be indicted.

14        Now, instead of an indictment against you, the offense to

15  which you propose to plead guilty has been brought against you

16  by the United States Attorney by the filing of an information.

17  Unless you waive the return of an indictment as to that offense,

18  we can't proceed on the basis of that information.  If you do

19  not waive the return of an indictment as to that offense, the

20  government may or may not present the case to the grand jury as

21  to that offense and may or may not request that the grand jury

22  indict you of that offense.

23        And even if the government were to do that, the grand jury

24  might or might not indict you as to that offense, even if the

25  case were presented to them.  However, if you waive the return

1    of the indictment by a grand jury as to the offense, the case as

2    to that offense will proceed against you on the basis of the

3    United States Attorney's information just as though you had been

4    indicted.

5        Okay.  I'm going to ask Defendants Ramirez, Adams, and

6    Nance some questions that bear on the waiver of the indictment.

7    I'll start with Defendant Ramirez.  Do you understand the

8    explanations I've given you concerning your right to be

9    indicted, your right to waive indictment and to proceed on the

10   basis of an information, and concerning a grand jury?  Do you

11   understand all those explanations I've given you?

12           DEFENDANT RAMIREZ:  Yes.

13           THE COURT:  Have you discussed with your attorney

14   whether you should waive the return of an indictment by a grand

15   jury?

16           DEFENDANT RAMIREZ:  Yes.

17           THE COURT:  Do you understand that you have the right

18   to insist on being indicted on an indictment by a grand jury as

19   to the two offenses charged by the information in this case

20   before proceeding further on the basis of that information?  Do

21   you understand that?

22           DEFENDANT RAMIREZ:  Yes.

23           THE COURT:  Have any threats or promises been made to

24   induce you to waive the return of an indictment to the offenses

25   charged by the information?

```
 1              DEFENDANT RAMIREZ:  No.

 2              THE COURT:  And is it your wish to waive the return of

 3  an indictment as to the offenses charged by the information?

 4              DEFENDANT RAMIREZ:  Yes.

 5              THE COURT:  Have you received a copy of the

 6  information that you propose to plead guilty to?

 7              DEFENDANT RAMIREZ:  Yes.

 8              THE COURT:  And has it been read to you in your

 9  language?

10              DEFENDANT RAMIREZ:  Yes.

11              THE COURT:  Do you understand exactly what it charges

12  you with?

13              DEFENDANT RAMIREZ:  Yes.

14              THE COURT:  Okay.  I'm going to ask that it be read

15  aloud.  It's not going to be long.

16              MR. BURGESS:  The information, Your Honor?

17              THE COURT:  Yes.

18              MR. BURGESS:  Thank you.  On or about August the 29th,

19  2008, in the Fort Worth Division of the Northern District of

20  Texas, the defendant, Juan Ramirez, knowingly made a false

21  statement and representation to M.L., doing business as Ammo

22  Depot, a person licensed to sell firearms under the provisions

23  of Chapter 44 of Title 18, United States Code, with respect to

24  information required by the provisions of Chapter 44 of Title

25  18, United States Code, to be kept in the records of M.L., in
```

1  that the defendant did state in the Department of Justice,

2  Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473,

3  Firearms Transaction Record, that he lived at 4229 Alamo Street,

4  Fort Worth, Texas, whereas in truth and fact, he was then living

5  at 4219 Lisbon Street, Fort Worth, Texas.  In violation of 18

6  U.S.C., 924(a)(1)(A).

7      Count 2.  On or about September the 20th, 2008, in the Fort

8  Worth Division of the Northern District of Texas, the defendant,

9  Juan Ramirez, knowingly made a false statement and

10  representation to D.N., doing business as Military Gun Supply, a

11  person licensed to sell firearms under the provisions of Chapter

12  44 of Title 18, United States Code, with respect to information

13  required by the provisions of Chapter 44 of Title 18, United

14  States Code, to be kept in the records of D.N., in that the

15  defendant did state in a Department of Justice, Bureau of

16  Alcohol, Tobacco, Firearms, and Explosives Form 4473, Firearms

17  Transaction Record, that he lived at 4229 Alamo Street, Fort

18  Worth, Texas, whereas in truth and fact, he was then living at

19  4212 Lisbon Street, Fort Worth, Texas.  In violation of 18

20  U.S.C., Section 924(a)(1)(A).

21      There is also a forfeiture allegation, Your Honor.

22        THE COURT:  Yes.  Go ahead and read it.

23        MR. BURGESS:  Upon conviction of any of the offenses

24  alleged in Counts 1 or 2 of this superseding information and

25  pursuant to 18 U.S.C., Section 924(d), and 28 U.S.C., Section

1    2461(c), the defendant, Juan Ramirez, shall forfeit to the

2    United States of America all firearms and ammunition involved or

3    used in the respective offense.

4        Signed by myself.

5            THE COURT:  Okay.  Defendant Ramirez, you've heard the

6    information read.  Do you understand exactly what you're charged

7    with, and do you understand there's a forfeiture allegation in

8    that information?  Do you understand all those things?

9            DEFENDANT RAMIREZ:  Yes, sir.

10            THE COURT:  Mr. Belcher, do you see any reason why

11    your client should not waive the return of an indictment as to

12    the offenses charged in the information?

13            MR. BELCHER:  No, I do not, Your Honor.

14            THE COURT:  And would a waiver by your defendant be

15    consistent with your advice to him?

16            MR. BELCHER:  It would, Your Honor.

17            THE COURT:  Why don't y'all sign the written waiver at

18    this time.

19        (Defendant Ramirez and counsel sign Waiver of Indictment.)

20            MR. BELCHER:  May I approach, Your Honor?

21            THE COURT:  Yes.

22        And why don't you read it aloud.  It's best to read the

23    waiver aloud, if you have one.

24            MR. BELCHER:  That was the only copy I have.

25            THE COURT:  You don't have one, Mr. Belcher?

1    You don't have a copy of the waiver?

2         MR. BURGESS:  I don't believe I do either, Your Honor.

3    If I can retrieve it, I'm happy to read it into the record.

4         THE COURT:  Okay.  Just a second.  I'll hand it back

5    to you.

6         MR. BURGESS:  Waiver of Indictment.  I, Juan Ramirez,

7    the above named defendant, who is accused of two counts of

8    making a false statement during the purchase of a firearm, in

9    violation of 18 U.S.C., Section 924(a)(1)(A), being advised of

10   the nature of the charges, the proposed information, and of my

11   rights, hereby waive prosecution by indictment and consent that

12   the proceeding may be by information rather than by indictment.

13   Signed this 11th day of December, 2009, by Defendant Juan

14   Ramirez and Matthew Belcher, attorney for defendant.

15        THE COURT:  Okay.  Why don't you hand that back.

16   Okay.  I find that the defendant is fully competent and

17   capable of waiving the return of an indictment as to the

18   offenses charged by the superseding information in this case and

19   that such a waiver has been knowingly and voluntarily made.  So

20   I accept that waiver, and I'm indicating my acceptance by

21   signing the waiver of indictment form.  And I'll order it to be

22   filed.

23   Okay.  Let me ask Defendant Adams some questions concerning

24   the waiver of indictment he proposes to make.  Defendant Adams,

25   did you understand the explanations I gave you concerning your

1    right to insist on an indictment, your right to waive the return

2    of an indictment and to proceed on the basis of an information,

3    and concerning a grand jury?

4            DEFENDANT ADAMS:  Yes, Your Honor.

5            THE COURT:  Have you discussed the matter of waiving

6    your right to an indictment by a grand jury as to the offenses

7    charged by the information with your attorney?

8            DEFENDANT ADAMS:  Yes, Your Honor.

9            THE COURT:  Do you fully understand that you have the

10   right to insist on an indictment by a grand jury as to those

11   offenses before proceeding further?

12           DEFENDANT ADAMS:  I do.

13           THE COURT:  Have any threats or promises been made to

14   induce you to waive the return of an indictment as to those

15   offenses?

16           DEFENDANT ADAMS:  No, sir.

17           THE COURT:  And is it your wish to waive the return of

18   an indictment as to those offenses?

19           DEFENDANT ADAMS:  Yes, Your Honor.

20           THE COURT:  Have you received a copy of the

21   superseding information?

22           DEFENDANT ADAMS:  Yes, I have.

23           THE COURT:  And have you read it and understand

24   exactly what you're charged with?

25           DEFENDANT ADAMS:  Yes, Your Honor.

1    THE COURT:  Okay.  I'm going to ask that it be read

2  aloud.

3    MR. DURDEN:  Your Honor, if it please the Court,

4  Mr. Adams has reviewed the superseding information.

5    THE COURT:  I'm going to ask that it be read aloud,

6  Mr. Schattman.

7    MR. SCHATTMAN:  United States of America versus Steven

8  Ray Adams, superseding information.  The United States Attorney

9  charges:

10    Count 1:  Conspiracy to maintain drug involved premises.

11  Commencing on or about June 1, 2009, and continuing thereafter

12  until on or about August 20th, 2009, in the Fort Worth Division

13  of the Northern District of Texas, Steven Ray Adams, also known

14  as "Duck," defendant, did intentionally and knowingly combine,

15  conspire, confederate, and agree with others, to open, maintain,

16  and use places, including 2116 San Fernando, Bedford, Texas, and

17  715 Vine Street, Euless, Texas, and 3716 Gazebo Court, No. 1824,

18  Fort Worth, Texas, for the purpose of distributing a Schedule II

19  controlled substance, methamphetamine.  In violation of 21

20  U.S.C., Sections 846 and 856.

21    Count 2.  Maintaining drug involved premises.  Commencing

22  on or about June 1, 2009, and continuing thereafter until on or

23  about August 20, 2009, in the Fort Worth Division of the

24  Northern District of Texas, Steven Ray Adams, also known as

25  "Duck," defendant, did intentionally and knowingly open,

1  maintain, and use a place, namely 715 Vine Street, Euless,

2  Texas, for the purpose of distributing the Schedule II

3  controlled substance, methamphetamine.  A violation of 21

4  U.S.C., Section 856.

5          THE COURT:  You've heard the superseding information

6  read, Mr. Adams.  Do you understand those are the offenses that

7  you're charged -- the information charges you with?

8          DEFENDANT ADAMS:  Yes, Your Honor.

9          THE COURT:  And, Mr. Durden, do you know of any reason

10 why your client should not waive the return of an indictment as

11 to those offenses?

12         MR. DURDEN:  I see no reason, Your Honor.

13         THE COURT:  And is such a waiver consistent with your

14 advice to the defendant?

15         MR. DURDEN:  It is, Your Honor.

16         THE COURT:  Okay.  I'll ask that the written waiver

17 form be signed.

18     (Defendant Adams and counsel sign Waiver of Indictment.)

19         THE COURT:  Why don't you read it aloud.

20     MR. SCHATTMAN:  Waiver of Indictment.  I, Steven Ray

21 Adams, also known as "Duck," the above named defendant who is

22 accused of conspiracy to maintain drug involved premises in

23 violation of 21 U.S.C., Sections 846 and 856; and of maintaining

24 drug involved premises in violation of 21 U.S.C., Section 856,

25 and being advised of the nature of the charges, the proposed

1    information, and of my rights, hereby waive in open court

2    prosecution by indictment and consent that the proceedings may

3    be by information rather than by indictment.

4              THE COURT:  Okay.  I'll order the waiver of indictment

5    filed.

6         I find that the defendant is fully competent and capable of

7    waiving the return of an indictment as to the offenses charged

8    by the superseding information in this case, and that such a

9    waiver is knowing and voluntary.  I accept that waiver, and I've

10   indicated my acceptance by signing the waiver of indictment

11   form.  And like I say, I'm ordering that filed at this time.

12        Okay.  Let me ask Defendant Nance some questions relating

13   to her intent to plead guilty to a superseding information.

14        Defendant Nance, did you understand all the explanations I

15   gave you concerning your right to insist on the return of an

16   indictment, your right to waive an indictment and to proceed on

17   the basis of an information, and concerning a grand jury?

18              DEFENDANT NANCE:  Yes, sir.

19              THE COURT:  Have you discussed the matter of waiving

20   your right to an indictment as to the offense charged by the

21   superseding information in this case by a grand jury with your

22   attorney?

23              DEFENDANT NANCE:  Yes, sir.

24              THE COURT:  And do you understand that you have the

25   right to insist on an indictment by a grand jury as to the

U.S. DISTRICT COURT

1    offense charged by the superseding information before proceeding

2    further?

3              DEFENDANT NANCE:  Yes, sir.

4              THE COURT:  Have any threats or promises been made to

5    induce you to waive the return of an indictment?

6              DEFENDANT NANCE:  No, sir.

7              THE COURT:  Is it your wish to waive the return of an

8    indictment by a grand jury as to the offense charged by the

9    superseding information?

10             DEFENDANT NANCE:  Yes, sir.

11             THE COURT:  And I'll ask that that information be read

12   aloud at this time.

13             MR. SCHATTMAN:  United States of America versus

14   Miyoshia Wylynn Nance.  The United States Attorney charges Count

15   1, maintaining drug involved premises.  From on or about

16   September 1, 2008, the exact date being unknown, and continuing

17   thereafter until August 20, 2009, in the Fort Worth Division of

18   the Northern District of Texas, Miyoshia Wylynn Nance,

19   defendant, did intentionally and knowingly open, maintain, and

20   use a place, to-wit, 2116 San Fernando, Bedford, Texas, for the

21   purpose of manufacturing and distributing the Schedule II

22   controlled substance methamphetamine.  A violation of 21 U.S.C.,

23   Section 856.

24             THE COURT:  You've heard the superseding information

25   read, Count 1 of it.  Do you understand that that's exactly what

1    you're charged with?

2              DEFENDANT NANCE:  Yes, sir.

3              THE COURT:  Do you know of any reason, Mr. White, why

4    your client should not waive the return of an indictment as to

5    that offense?

6              MR. WHITE:  No, Your Honor.

7              THE COURT:  Is such a waiver consistent with your

8    advice to her?

9              MR. WHITE:  Yes, Your Honor.

10             THE COURT:  Okay.  I'll ask that the written waiver

11   form be signed and handed up.

12       (Defendant Nance and counsel sign Waiver of Indictment.)

13             THE COURT:  And read it aloud.

14             MR. SCHATTMAN:  United States of America versus

15   Miyoshia Wylynn Nance, Waiver of Indictment.  I, Miyoshia Wylynn

16   Nance, the above named defendant who is accused of maintaining

17   drug involved premises in violation of 21 U.S.C., Section 856,

18   and being advised of the nature of the charges, the proposed

19   information, and of my rights, hereby waive in open court

20   prosecution by indictment and consent that the proceedings may

21   be by information rather than by indictment.

22             THE COURT:  I find that the defendant, Miyoshia Wylynn

23   Nance, is fully competent and capable of waiving the return of

24   an indictment as to the offense charged by the information, and

25   her waiver is a knowing and voluntary one.  I accept it, and

1    I've indicated my acceptance by signing the waiver of indictment

2    form at the place indicated, and I'll order that it be filed.

3        Okay.  I'm going to start taking up each of the defendants

4    individually, and this is going to take a while.  I think what

5    I'm going to do -- We'll take a recess somewhere about the

6    middle of it.  I think I'm going to tell the marshal that if

7    they want to, they can take Defendants Sides, Ramirez, Adams,

8    and Nance back downstairs.  And then we'll take a recess before

9    we need them and give you an opportunity to bring them back up

10    at that time.

11        And the attorneys representing those defendants, you do

12    whatever you want to do.  We're going to have a recess, and then

13    you'll need to be back in here after that recess.

14        (Court addresses Defendant Perales, 11:49 a.m. until

15         12:00 p.m.)

16        (Court addresses Defendant Fuentes, 12:00 p.m. until

17         12:10 p.m.)

18        (Court addresses Defendants Lozano and Flores, 12:10 p.m.

19         until 1:00 p.m.)

20        (Court in recess, 1:00 p.m. until 1:21 p.m.)

21        (Court addresses Defendant Sides, 1:21 p.m. until

22         1:39 p.m.)

23            THE COURT:  Okay.  I'm calling back now in No.

24    4:09-CR-160-A.  It's United States of America versus Juan

25    Ramirez.  Mr. Schattman is here filling in for Mr. Burgess.

```
 1              MR. SCHATTMAN:  Yes, Your Honor.

 2              THE COURT:  And Mr. Belcher is here for the defendant.

 3    And, of course, Mr. Ramirez and the interpreter are here.

 4         Mr. Ramirez, before I go any further, let me get some

 5    personal information about you.  What is your age and date of

 6    birth?

 7              DEFENDANT RAMIREZ:  Forty years old.  August 6th, '69.

 8              THE COURT:  And how far did you go in school?

 9              DEFENDANT RAMIREZ:  Seventh grade in Mexico.

10              THE COURT:  Where in Mexico did you go to school?

11              DEFENDANT RAMIREZ:  Michoacan.

12              THE COURT:  What kind of work have you done?

13              DEFENDANT RAMIREZ:  Right now, I am remodelling.

14              THE COURT:  You're a what?

15              THE INTERPRETER:  Remodelling.

16              THE COURT:  Remodelling?  Are you now under the care

17    of a physician or a psychiatrist for anything?

18              DEFENDANT RAMIREZ:  No.

19              THE COURT:  Have you been at any time in the last six

20    months?

21              DEFENDANT RAMIREZ:  No.

22              THE COURT:  Have you ever been hospitalized or treated

23    for narcotics addiction or alcoholism?

24              DEFENDANT RAMIREZ:  No.

25              THE COURT:  As far as you're concerned, do you suffer
```

1  from any kind of emotional or mental disability or problem?

2          DEFENDANT RAMIREZ:  I'm okay.

3          THE COURT:  Are you now under the influence of alcohol

4  or any kind of drug?

5          DEFENDANT RAMIREZ:  No.

6          THE COURT:  Do you consider that you're of sound mind?

7          DEFENDANT RAMIREZ:  Yes.

8          THE COURT:  You understand what you're here for today,

9  that is, with the intent to plead guilty to the offenses charged

10  by Counts -- Well, first of all, your intent is to -- Well,

11  you've already done that.  You've waived the return of an

12  indictment as to two counts, that is, false statement during

13  purchase of a firearm, and now you're here with the intent to

14  plead guilty to both of those offenses.  Do you understand

15  that's why you're here today?

16          DEFENDANT RAMIREZ:  Yes.

17          THE COURT:  Do you have any reason to think,

18  Mr. Belcher, that your client is not fully competent to enter

19  such a plea?

20          MR. BELCHER:  No, Your Honor.

21          THE COURT:  Or that such a plea would not be a knowing

22  and voluntary plea?

23          MR. BELCHER:  No, Your Honor.

24          THE COURT:  Now, I have two documents that have been

25  handed up to me that appear to bear your signature.  One of them

1    is called the plea agreement, and the other is called the

2    factual resume.  I'm going to hold them up so you can see what

3    I'm talking about.  Do you see those documents?

4            DEFENDANT RAMIREZ:  Yes.

5            THE COURT:  Did you sign both of those documents?

6            DEFENDANT RAMIREZ:  Yes.

7            THE COURT:  Were they read to you in your language

8    before you signed them?

9            DEFENDANT RAMIREZ:  Yes.

10           THE COURT:  And did you understand what each one of

11   them said before you signed them?

12           DEFENDANT RAMIREZ:  Yes.

13           THE COURT:  And did you discuss those documents with

14   your attorney before you signed them so you'd know the legal

15   meaning of the things in the documents?

16           DEFENDANT RAMIREZ:  Yes.

17           THE COURT:  And did you understand what you were told

18   from a legal standpoint about the documents?

19           DEFENDANT RAMIREZ:  Yes.

20           THE COURT:  Okay.  Well, you know the next thing I'm

21   going to go over with you, then, because it's in that document

22   called factual resume.  But I'm going to review it with you

23   again.

24       If you were to persist in your -- Well, if you were to

25   plead not guilty to the offenses charged by Counts 1 and 2 of

1  the superseding information in this case, that is, the offense

2  of false statement during purchase of a firearm, which is

3  charged by each of those counts, for you to be convicted of each

4  of those counts, the government would have to prove as to each

5  of them what I'm getting ready to go over with you beyond a

6  reasonable doubt to a jury, and that is:

7       First, that you -- I'm a little bit confused.  That says

8  "the person named."  Who is that referring to?

9           MR. SCHATTMAN:  That will be the --

10          THE COURT:  Ammo Depot?

11          MR. SCHATTMAN:  In the superseding information, it's

12  the representation in Count 1 that's M.L., doing business as

13  Ammo Depot.

14          THE COURT:  Is that what the person named?

15          MR. SCHATTMAN:  Yes.  The person named as such was a

16  -- that the person who is named as a federally licensed firearm

17  dealer was, in fact, a federally licensed firearm dealer.

18          THE COURT:  Now that I understand that.

19       These are the things the government would have to prove to

20  a jury beyond a reasonable doubt.

21       First, that M.L., doing business as Ammo Depot, was a

22  federally licensed firearms dealer at the time the alleged

23  offense occurred.

24          MR. SCHATTMAN:  Your Honor, in Count 2 it is D.N.,

25  doing business as Military Gun Supply.

1          THE COURT:  Oh, it's different in each one.

2          MR. SCHATTMAN:  It's a different licensed dealer.

3          THE COURT:  Okay.  Let me back up.

4      As to Count 1 of the superseding information, for you to be

5  found guilty of that offense, if you were to plead not guilty to

6  it, the government would have to prove to a jury each of the

7  things I'm getting ready to go over.

8      First, that M.L., doing business as Ammo Depot, was a

9  federally licensed firearms dealer at the time alleged on August

10  29, 2008, on or about that date.

11      Second, that you made a false statement or representation

12  in the firearm records of M.L., doing business as Ammo Depot, as

13  required by federal law.

14          MR. SCHATTMAN:  In the records, the dealer was

15  required.

16          THE COURT:  Let me go over the second one again.

17      That you made a false statement or representation in the

18  firearm records that M.L., doing business as Ammo Depot, was

19  required by federal law to maintain.

20      And, third, that you made that false statement or

21  representation with knowledge that it was false.

22      Do you understand those are the things the government would

23  have to prove to a jury beyond a reasonable doubt to cause you

24  to be convicted of the offense charged by Count 1 of the

25  indictment?

1              DEFENDANT RAMIREZ:  Yes.

2              THE COURT:  And do you admit that those facts exist in

3    this case?

4              DEFENDANT RAMIREZ:  Yes.

5              THE COURT:  Okay.  Now, for you to be convicted of the

6    offense charged by Count 2 of the indictment, the government

7    would have to prove -- if you don't plead guilty to it, the

8    government would have to prove to a jury beyond a reasonable

9    doubt that D.N., doing business as Military Gun Supply, was a

10   federally licensed firearms dealer on or about September 30 of

11   2008.

12        And, second, that you made a false statement or

13   representation in the firearm records that D.N., doing business

14   as Military Gun Supply, was required by federal law to maintain.

15        And, third, that you made that false statement or

16   representation with knowledge it was false.

17        Now, do you understand those are the things the government

18   would have to prove to a jury beyond a reasonable doubt to cause

19   you to be convicted of the offense charged by Count 2 of the

20   indictment?

21             DEFENDANT RAMIREZ:  Yes.

22             THE COURT:  And do you admit that all of those facts

23   exist in this case?

24             DEFENDANT RAMIREZ:  Yes.

25             THE COURT:  Now, you have your attorney, Mr. Belcher,

1    with you.  Have you been satisfied with the legal representation

2    he's given you?

3            DEFENDANT RAMIREZ:  Yes.

4            THE COURT:  Do you have any complaint whatsoever with

5    him as your attorney?

6            DEFENDANT RAMIREZ:  No.

7            THE COURT:  And I take it, Mr. Belcher, that the

8    willingness of your client to plead guilty to Counts 1 and 2 of

9    the superseding information is the result of prior discussions

10   between the two of you, on the one hand, and the attorney for

11   the government, on the other?

12           MR. BELCHER:  That's correct, Your Honor.

13           THE COURT:  And that those discussions resulted in the

14   plea agreement I mentioned a moment ago?

15           MR. BELCHER:  Yes, they did.

16           THE COURT:  Okay.  I'll ask that it be read aloud.

17           MR. SCHATTMAN:  The United States of America versus

18   Juan Ramirez.  Plea agreement.  Juan Ramirez, the defendant; the

19   defendant's attorney; and the United States of America, the

20   government, agree as follows:

21       One, Rights of the Defendant.  Ramirez understands that he

22   has the rights to plead not guilty; to have a trial by jury; to

23   have his guilt proven beyond a reasonable doubt; to confront and

24   cross-examine witnesses and to call witnesses in his defense;

25   and against compelled self-incrimination.

1        Paragraph two, Waiver of Rights and Plea of Guilty.

2   Ramirez waives these rights and pleads guilty to the offense

3   alleged in Counts 1 and 2 of the superseding information,

4   charging the making of a false statement during a purchase of a

5   firearm in violation of 18 U.S.C., Section 924(a)(1)(A).

6   Ramirez understands the nature and elements of the crime to

7   which he is pleading guilty and agrees that the factual resume

8   he has signed is true and will be submitted as evidence.

9        Paragraph three, Sentence.  The maximum penalty the Court

10  can impose include:  imprisonment for a term of not more than

11  ten years, five years on each count; a fine not to exceed

12  $500,000, $250,000 per count, or twice the amount of criminally

13  derived property involved in the transaction.  A term of

14  supervised release of not more than three years on each count,

15  which may be mandatory under the law and will follow any term of

16  imprisonment.  If the defendant violates the conditions of

17  supervised release, the Court may revoke such release term and

18  require the defendant serve an additional period of confinement,

19  and if multiple terms of supervised release are revoked, the

20  resulting term of imprisonment could be ordered to run

21  consecutively to each other.

22      A mandatory special assessment of a total of $200, $100 per

23  count.  A forfeiture of money and property; and payment of costs

24  of incarceration and supervision.

25          THE COURT:  Let me stop you there a minute.

1      Mr. Ramirez, you've just heard read the penalties that can

2  be imposed on somebody who is convicted of the two offenses that

3  you propose to plead guilty to, that is, the two false

4  statements during purchase of firearm offenses.  Do you realize

5  that if you plead guilty to both of those offenses, you will be

6  subjecting yourself to the following penalties and punishments:

7      A term of imprisonment of five years as to each count, or a

8  total of ten years as to both counts; a fine not to exceed

9  $250,000 as to each count for a total of $500,000; plus, a

10  service of a term of supervised release of three years as to

11  each count, and that would start when you get out of prison.

12  They'll be made to run concurrently, so that the total term

13  would only be three years.  And that may be mandatory.

14      Plus, you would be required to make a payment of a special

15  assessment of $100 per count that you pleaded guilty to for a

16  total of $200.  Plus, you would be required to make -- forfeit

17  the firearms and ammunitions as provided in the forfeiture

18  allegation of the superseding information.  Plus, if you were to

19  violate any condition of that supervised release, it could be

20  revoked and you could be sent back to prison and could be

21  required to serve another term of imprisonment that could be as

22  long as your term of supervised release.

23      Now, do you understand you're subjecting yourself to all

24  those penalties and punishments by a plea of guilty?

25          DEFENDANT RAMIREZ:  Yes.

1          THE COURT:  Okay.  Go ahead with the reading.

2          MR. SCHATTMAN:  Paragraph four, Court Sentencing

3    Discretion and Role of the Guidelines.  Ramirez understands that

4    the sentence in this case will be imposed by the Court after

5    consideration of the United States Sentencing Guidelines.  The

6    guidelines are not binding on the Court but are advisory only.

7    Ramirez has reviewed the guidelines with his attorney but

8    understands that no one can predict with certainty the outcome

9    of the Court's consideration of the guidelines in this case.

10   Ramirez will not be allowed to withdraw his plea if his sentence

11   is higher than expected.  Ramirez fully understands that the

12   actual sentence imposed, so long as it is within the statutory

13   maximum, is solely in the discretion of the Court.

14        Paragraph five, Defendant's Cooperation.  Upon demand,

15   Ramirez shall submit a personal financial statement under oath

16   and submit to interviews by the government and the U.S.

17   Probation Office regarding his capacity to satisfy any fines or

18   restitution.  The government will advise the Court of the extent

19   of Ramirez's cooperation.

20        Paragraph six, Government's Agreement.  The government will

21   not bring any additional charges against the defendant based

22   upon the conduct set out in the factual resume.  The government

23   will dismiss, after sentencing, any remaining charges in the

24   pending indictment or information.

25        Paragraph seven, Violation of Agreement.  Ramirez

1    understands that if he violates any provision of this agreement

2    or if his guilty plea is vacated or withdrawn, the government

3    will be free from any obligations of the agreement and free to

4    prosecute Ramirez for all offenses of which it has knowledge.

5    In such event, Ramirez waives any objection based upon delay in

6    prosecution.  If the plea is vacated or withdrawn for any reason

7    other than a finding that it was involuntary, Ramirez also

8    waives objection to the use against him of any information or

9    statements he has provided to the government, and any resulting

10   leads.

11        Paragraph eight, Voluntary Plea.  This plea of guilty is

12   freely and voluntarily made and is not the result of force or

13   threats or of promises apart from those set forth in this plea

14   agreement.  There have been no guarantees or promises from

15   anyone as to what sentence the Court will impose.

16        Paragraph nine, Forfeiture of Property.  Upon conviction

17   for any of the offenses alleged in Counts 1 and 2 of the

18   superseding information and pursuant to 18 U.S.C., Section

19   924(d), and 28 U.S.C., Section 2461(c), the defendant, Juan

20   Ramirez, shall forfeit to the United States of America all

21   firearms and ammunitions involved or used in the respective

22   offense.

23        Paragraph ten, Representation of Counsel.  Ramirez has

24   thoroughly reviewed all legal and factual aspects of this case

25   with his lawyer and is fully satisfied with that lawyer's legal

1  representation.  Ramirez has received from his lawyer

2  explanations satisfactory to him concerning each paragraph of

3  this plea agreement, each of his rights affected by this plea

4  agreement, and the alternatives available to him other than

5  entering into this agreement.  Because he concedes that he is

6  guilty, and after conferring with his lawyer, Ramirez has

7  concluded that it is in his best interest to enter into this

8  plea agreement and all its terms, rather than to proceed to

9  trial in this case.

10      Paragraph eleven, Limitation of Agreement.  This agreement

11  is limited to the United States Attorney's Office for the

12  Northern District of Texas and does not bind any other federal,

13  state, or local prosecuting authorities nor does it prohibit any

14  civil or administrative proceedings against Ramirez, or any

15  property.

16      Paragraph twelve, Entirety of the Agreement.  This document

17  is a complete statement of the parties' agreement and may not be

18  modified unless the modification is in writing and signed by all

19  parties.  Agreed to and signed the 7th day of December 2009.

20          THE COURT:  You've heard the plea agreement read.  Are

21  those all of the terms of your plea agreement with the

22  government?

23          DEFENDANT RAMIREZ:  Yes.

24          THE COURT:  Did you voluntarily and of your own free

25  will enter into that plea agreement?

1          DEFENDANT RAMIREZ:  Yes.

2          THE COURT:  Other than that plea agreement, do you

3    have any deal or understanding or agreement of any kind with the

4    government?

5          DEFENDANT RAMIREZ:  No.

6          THE COURT:  Other than that plea agreement, has anyone

7    made any promise or assurance to you of any kind in an effort to

8    induce you to enter a plea of guilty in this case?

9          DEFENDANT RAMIREZ:  No.

10          THE COURT:  Has anyone mentally, physically, or in any

11    way attempted in any way to force you to plead guilty in this

12    case?

13          DEFENDANT RAMIREZ:  No.

14          THE COURT:  Do you understand that if you plead guilty

15    and if your plea is accepted, you will be adjudged guilty of the

16    offense charged by Counts 1 and 2 of the superseding information

17    and that your punishment will be assessed somewhere within the

18    range of punishment provided by statute and your sentence will

19    be within the range provided by statute?

20          DEFENDANT RAMIREZ:  Yes.

21          THE COURT:  Do you understand that if you plead guilty

22    and then end up getting a sentence that's greater than you hoped

23    it would be, you'll still be bound by your plea of guilty and

24    won't have a right to withdraw it?

25          DEFENDANT RAMIREZ:  Yes.

1          THE COURT:  With the knowledge you now have, how do

2     you plead to the offenses charged by Counts 1 and 2 of the

3     superseding information, guilty or not guilty?

4          DEFENDANT RAMIREZ:  Guilty.

5          THE COURT:  Is that consistent with your advice to the

6     defendant, Mr. Belcher?

7          MR. BELCHER:  It is, Your Honor.

8          THE COURT:  And is his plea of guilty consistent with

9     your advice to him?

10          MR. BELCHER:  It was, Your Honor.

11          THE COURT:  Okay.  I'll accept that plea on condition

12     that there's a factual basis to support it and at this time I'll

13     ask that the stipulated facts be read aloud.

14          MR. SCHATTMAN:  Stipulated facts:  Federal firearms

15     licensees (FFL) are dealers of firearms who sell firearms as

16     part of their livelihood.  FFLs are required by federal law to

17     maintain records relating to the sale of firearms to consumers.

18     The principal purpose of requiring licensed firearms dealers to

19     obtain such information from purchasers is to assist law

20     enforcement activities.  One of the records required to be kept

21     by FFLs is the Bureau of Alcohol, Tobacco, Firearms, and

22     Explosives Form 4473 (Form 4473).  Question No. 2 of the Form

23     4473 asks the purchaser to list his or her current residence

24     address.

25          On or about August 29, 2008, the defendant went to Ammo

1   Depot, a gun store owned by M.L.  M.L. was a federally licensed

2   firearms dealer at that time.  The defendant purchased a Barrett

3   .50 caliber rifle, Serial No. 22843, and five Romarms WASR-10

4   rifles, Serial Nos. 19845AY4514 and 46491065OP1901, 1965LM1248,

5   1966TU2666, and 1975F00766.  Although the defendant did not

6   live at 4229 Alamo Street at the time he made the purchase, he

7   listed the Alamo Street address as his home address on the Form

8   4473.  In fact, the defendant had not lived at the Alamo Street

9   address for approximately ten years.  At the time he purchased

10  the weapons, he lived at 4212 Lisbon, Fort Worth, Texas.  The

11  defendant knew he was lying when he filled out the Form 4473.

12      On or about September 20th, 2008, the defendant purchased

13  20 AK-47 type rifles from Military Gun Supply in Fort Worth,

14  Texas.  Military Gun Supply is owned by D.N.  D.N. was a

15  federally licensed firearm dealer at the time.  Although the

16  defendant did not live at 4229 Alamo Street at the time he made

17  the purchase, he listed the Alamo Street address as his home

18  address on the Form 4473.  In fact, the defendant had not lived

19  at the Alamo Street address for approximately ten years.  At the

20  time he purchased the weapons, he lived at 4212 Lisbon, Fort

21  Worth, Texas.  The defendant knew he was lying when he filled

22  out the Form 4473.

23      THE COURT:  You've heard the stipulated facts read.

24  Are all those facts true and correct?

25      DEFENDANT RAMIREZ:  Yes.

1              THE COURT:  Are they consistent with your

2    understanding of the true facts, Mr. Belcher?

3              MR. BELCHER:  They are, Your Honor.

4              THE COURT:  Okay.  Let me direct my attention, by the

5    way, to the forfeiture allegations.  Do you plead true or not

6    true to the forfeiture allegations in the superseding

7    information?

8              DEFENDANT RAMIREZ:  True.

9              THE COURT:  Okay.  The Court finds in the case of

10   United States of America versus Juan Ramirez, that the defendant

11   is fully competent and capable of entering an informed plea, and

12   that his plea of guilty to the offenses charged by Counts 1 and

13   2 in the superseding information and his plea of true to the

14   forfeiture allegations in the superseding information are

15   voluntary pleas supported by an independent basis in fact

16   containing each of the essential elements of the offenses

17   charged by Counts 1 and 2 of the superseding information and of

18   the forfeiture allegations and that such plea did not result

19   from force, threats, or promises other than those set forth in

20   the plea agreement.  His plea of guilty to the offenses charged

21   by Counts 1 and 2 of the superseding information and his plea of

22   true to the forfeiture allegations are accepted by the Court and

23   he is now adjudged guilty of the offenses charged by Counts 1

24   and 2 of the superseding information and his interest in the

25   property described in the forfeiture allegation are subject to

1   forfeiture.

2      The defendant is remanded to custody, and the attorneys are

3   excused.

4         MR. BELCHER:  Your Honor, Mr. Ramirez is out on

5   pretrial conditions.

6         THE COURT:  Oh, okay.  He's not in custody.  What's

7   the government's thought as to whether he should be permitted to

8   remain?

9         MR. SCHATTMAN:  Your Honor, it's my understanding that

10   there have been no adverse reports from pretrial services.  He

11   has been compliant with those conditions, and we're satisfied

12   that those conditions are sufficient.

13         THE COURT:  Does the government stipulate to whatever

14   facts must exist for me to permit him to remain free on

15   conditions of release?

16         MR. SCHATTMAN:  We will, Your Honor.

17         THE COURT:  Okay.  I'm going to let you remain free,

18   subject to the conditions of release that Judge Ramirez fixed

19   when you appeared before her on October 26, 2009.  Do you

20   remember what those conditions were?

21         DEFENDANT RAMIREZ:  Yes.

22         THE COURT:  I'm going to add one condition to those

23   conditions.  Referring to the form she used, I'm going to add

24   Condition 7(p).  And that is that you shall refrain from use or

25   unlawful possession of a narcotic drug or other controlled

1    substances defined in 21 United States Code, Section 803, unless

2    that's prescribed by a licensed medical practitioner.

3        Do you understand the condition I'm adding?

4            DEFENDANT RAMIREZ:  Yes.

5            THE COURT:  And are you willing to abide by all of

6    those conditions if I allow you to remain free pending

7    sentencing?

8            DEFENDANT RAMIREZ:  Yes.

9            THE COURT:  Okay.  Well, I'm going to allow him to

10   remain free pending sentencing, subject to all conditions we've

11   discussed.  The defendant and the attorneys are excused.

12       (Proceedings concluded, 2:05 p.m.)

13                            -o0o-

14                          CERTIFICATE

15       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.  I
16   further certify that the transcript fees format comply with
     those prescribed by the Court and the Judicial Conference of the
17   United States.

18

19   s/Eileen M. Brewer                    August 16, 2010
     Eileen M. Brewer                      Date
20   Official Court Reporter
     Texas CSR No. 3016
21

22

23

24

25